*In the* United States District Court *for the*

District *of* Maryland

Northern Division

Kevin R. Vessells

   4057 Annellen Road
   Baltimore, Maryland 21215

   *Plaintiff,*

   *v.*

Kaydon Ring & Seal, Inc.

   1601 Wicomico Street
   Baltimore, Maryland 21230

*Serve On: Resident Agent*
CSC-Lawyers Incorporating Service, Co.
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

   *Defendant.*

*Civil Action No.:* _____

**Jury Trial Demanded**

## Complaint & Jury Demand

Kevin R. Vessels, by his attorneys James M. Ray II and Ledyard | Ray LLP, hereby files this Complaint against the above-captioned Defendant. Mr. Vessels complains against the Defendant Kaydon Ring & Seal, Inc. because of discrimination and retaliation experienced at his workplace. Mr. Vessells was treated worse than his White colleagues; he was targeted for removal after reporting the presence of a hangman's noose strung up at his workstation.

## Nature of Controversy

1.  This is a civil action against Defendant for injuries and damages which Plaintiff, Kevin R. Vessells, sustained as a result of Defendant's negligent, discriminatory, and/or retaliatory actions against him in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* (hereinafter the "Civil Rights Act of 1991"), the Code of Maryland, and Maryland common law.

## Jurisdiction & Venue

2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 2000e-5(f)(3).

3.  This Court is the proper venue for this action, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because all acts giving rise to these claims occurred within the District of Maryland.

4.  A Notice of Suit Rights was issued to Plaintiff by the United States Equal Employment Opportunity Commission (hereinafter the "EEOC") on March 6, 2017, which is attached hereto as Exhibit 1.

## Parties

5.  Plaintiff Kevin R. Vessells is and was at all times relevant to this Complaint a citizen of the United States of America, a resident of Baltimore, Maryland, and a Black man.

6.  Defendant Kaydon Ring & Seal, Inc. (hereinafter "Kaydon") is and was at all times relevant to this Complaint a Delaware corporation, headquartered in Muskegon, Michigan and which continuously does business and operates within the State of Maryland with at least fifteen (15) Maryland employees.

**Facts Common to All Counts**

7.  Plaintiff began working for Defendant in October of 2000 as a Railroad Shop-Machine Operator.

8.  By 2012, Plaintiff continued to work for Defendant and had been elevated to the position of Operator Side Grinder.

9.  On July 3, 2014, while approaching his workstation, Plaintiff observed a hose hanging in the shape of a hangman's noose.

10. As a Black man, Plaintiff interpreted the hangman's noose hanging in his work area as an act of racial intimidation against himself and other Black employees.

11. Plaintiff immediately reported the disturbing incident to his supervisors and to the representatives of Defendant's Human Resources department.

12. On July 17, 2014, Plaintiff met with Tracey Rogers, Defendant's Human Resources manager to discuss the incident.

13. Ms. Rogers, on behalf of Defendant, undertook a cursory investigation and dismissed Plaintiff's concerns as unfounded.

14. On August 1, 2014, Plaintiff's supervisor Eugene Okon warned him that upper management was going to take a special interest in him after reporting the hangman's noose incident.

15. Plaintiff's report of the intimidating and harassing conduct initiated a pattern of discrimination and retaliation during which Plaintiff lost out on promotional and other career advancement opportunities, was subject to unnecessary and harassing investigations, was disproportionately punished, was punished for unfounded reasons, and ultimately was terminated from his position.

16. Plaintiff applied for internal promotions on August 20, 2014; April 24, 2015; May 8, 2015; and July 22, 2015.

17. Plaintiff's applications for internal promotion were systematically denied for discriminatory and/or retaliatory reasons.

18. On August 20, 2014, Plaintiff applied for a job entitled Final Inspector – Shaft Seal Trainee.

19. Plaintiff's application for the Final Inspector – Shaft Seal Trainee job was denied.

20. Plaintiff was told that "an employee in the seniority department was given the position."

21. Upon information and belief, the job was actually given to another employee who was junior to Plaintiff.

22. Plaintiff's application for the Final Inspector – Shaft Seal Trainee job was denied because of Plaintiff's racial status and/or because he had previously opposed racially discriminatory behavior.

23. On April 24, 2015, Plaintiff applied for a job entitled Operator Plant Support Service.

24. Plaintiff's application for the Operator Plant Support Service job was not processed according to Kaydon's procedures and, thus, Plaintiff was never even considered for the position.

25. Plaintiff's application for the Operator Plant Support Service job was ignored because of Plaintiff's racial status and/or because he had previously opposed racially discriminatory behavior.

26. On May 8, 2015, Plaintiff applied for a job entitled Operator Teflon Trainee.

27. This time, Kaydon accepted Plaintiff's application.

28. On information and belief, no one else submitted an application for that job.

29. On information and belief, because only Plaintiff was in the running for the Operator Teflon Trainee position, on June 18, 2015, Defendant retracted the position and informed Plaintiff that the job no longer existed.

30. Plaintiff's application for the Operator Teflon Trainee job was denied, and the job position itself retracted, because of Plaintiff's racial status and/or because he had previously opposed racially discriminatory behavior.

31. On July 22, 2015, Plaintiff applied for another opening in the position of Operator Plant Support Service.

32. Plaintiff's application was denied by a supervisor, Mr. White, who falsely claimed he was ineligible to bid for open jobs because of disciplinary actions.

33. This was a pretext for the real reason that Plaintiff's application for the Operator Plant Support Service job was denied, which was due to Plaintiff's racial status and/or his previous opposition to racially discriminatory behavior.

34. Starting in February of 2015, Plaintiff's work was audited disproportionately more than the work of other employees.

35. By auditing Plaintiff's work more intensely, Kaydon hoped to create a paper trail that would provide a pretext for punishing Plaintiff.

36. On May 23, 2015, Plaintiff was given a written reprimand by Defendant, indicating deficient work performance.

37. Defendant's written warning cited occasions where rings produced by Plaintiff were allegedly too thin.

38. Plaintiff had previously spoken with his supervisor about difficulty with his equipment which made it harder to maintain the size of parts he was working on.

39. Plaintiff's supervisor advised him to separate thin parts and let them go.

40. Plaintiff followed the advice of his supervisor and this formed the basis of the May 23, 2015, written warning.

41. Plaintiff, thus, was reprimanded for following his supervisor's instructions.

42. The May 23, 2015, reprimand was motivated not by any misconduct of Plaintiff, but by Plaintiff's racial status and/or Plaintiff's previous opposition to racially discriminatory conduct.

43. On June 26, 2015, Plaintiff was issued a final written warning and suspended for three (3) days.

44. The June 26, 2015, final written warning included behavior addressed in the May 23, 2015, reprimand.

45. Plaintiff was not given the May 23, 2015, reprimand until June 25, 2015.

46. To the extent that the May 23, 2015, and June 26, 2015, disciplinary measures were based on Plaintiff's genuine performance issues, if any, these issues were double-counted and used as the predicates for the two disciplinary measures without any notice or opportunity to remediate given to Plaintiff.

47. The June 26, 2015, final written warning was motivated not by any misconduct of Plaintiff, but by Plaintiff's racial status and/or Plaintiff's previous opposition to racially discriminatory conduct.

48. On August 13, 2015, Plaintiff was assigned to Job # 30054-00.

49. The rings provided to Plaintiff for Job # 30054-00 were defective, in that they came to him with a high step height.

50. Plaintiff had his supervisor take note of this fact and sign the Job Operation Listing.

51. Plaintiff's supervisor, Mr. Charles Garafolo, wrote that "[r]ings came to this op with high step height. OK to run. After running rings are low step height."

52. Plaintiff's supervisor further indicated that the low step height rings should be screened and then subjected to a shimming procedure in order to be corrected.

53. Plaintiff followed these instructions, working with the rings that he could and screening out the ones with low step height.

54. Plaintiff followed procedures, marking the screened out rings as scrap and indicating that they needed reworking in order to be usable for the job.

55. On August 16, 2015, Plaintiff filed a charge with the EEOC alleging that he had been discriminated against based upon his race and/or suffered retaliation.

56. On information and belief, Defendant began to retaliate against Plaintiff for filing the August 16, 2015, EEOC charge.

57. On August 24, 2015, Plaintiff was summoned by Defendant's human resources representatives and told he would be suspended for five days for poor work performance on Job # 30054-00.

58. Plaintiff showed Defendant's representatives the notes from his supervisor regarding Job # 30054-00, which revealed that Plaintiff had committed no error or misconduct.

59. Plaintiff was dismissed from the meeting.

60. On September 17, 2015, Plaintiff was written up and suspended for the August 13, 2015, performance.

61. According to the disciplinary paperwork, Plaintiff "ran 39 pieces for an entire shift. Out of those 39 pieces, 20 pieces were found to be scrapped for low width."

62. According to the Job Operation Listing for Job # 30054-00, however, Plaintiff's supervisor attested to the fact that the rings provided to Plaintiff were defective and the supervisor approved marking them as scrap for further shimming.

63. Thus, Plaintiff was suspended from work pursuant to the September 17, 2015, write up for defects in the rings that were not caused by him and which were accepted by his supervisor, the same issues he had explained on August 24, 2015, when Defendant first tried to punish him for this innocuous behavior.

64. The September 17, 2015, write up and punishment was not due to any genuine problem with Plaintiff's performance, but, instead, was motivated by Plaintiff's racial status and/or his previous opposition to racially discriminatory behavior.

65. The attempts to punish Plaintiff for scrap rates stand in marked contrast to the treatment of Plaintiff's similarly situated, but racially dissimilar coworkers, whose failed production runs resulted in no write ups and no discipline.

66. Ron Winters, a White man, scrapped forty-one (41) pieces on December 10, 2015 and received no sanction.

67. Randy Cook, another White man, received numerous write ups for tardiness and other performance issues while he was on a new-hire probationary period with Kaydon between 2014 and 2015.

68. Despite these infractions, Randy Cook was not terminated, but instead received preferential treatment including but not limited to being granted a lateral transfer to the Roko Room.

69. On numerous such occasions, White workers went unpunished for poor work performance.

70. Plaintiff's similarly situated White coworkers were treated more favorably and/or more leniently because of Plaintiff's racial status as a Black man and/or because of his previous opposition to racially discriminatory behavior.

71. There were no problems with Plaintiff's work quality.

72. The allegations that Plaintiff's work quality was deficient were based on false or incomplete information and were designed to provide a pretext for Defendant's termination of Plaintiff.

73. On December 18, 2015, Defendant's Human Resources manager, Tracey Rogers, who had dismissed Plaintiff's concerns about the hangman's noose at his workstation in July of 2014, wrote Plaintiff a letter informing him that he had been terminated for work quality.

74. Plaintiff was terminated because of his racial status and/or because of his previous opposition to racially discriminatory behavior.

## Claims for Relief

### I.    *Title VII—Race Discrimination*

75.   Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

76.   Defendant unlawfully discriminated against Plaintiff on the basis of his race.

77.   42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race.

78.   Defendant discriminated against Plaintiff on the basis of his race when it subjected Plaintiff to harassment, creating a hostile work environment, when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

79.   Defendant also discriminated against Plaintiff on the basis of his race when it failed to take appropriate corrective action when placed on notice of the harassment.

80.   As a result of Defendant's violations of Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

## II.   Title VII—Retaliation

81. Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

82. Defendant retaliated against Plaintiff on the basis of his opposition to racial discrimination.

83. 42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to retaliate against an employee on account of that employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination.

84. Plaintiff opposed, complained of, and sought remedies for the racially discriminatory conduct engaged in by Defendant.

85. Because of Plaintiff's opposition to, complaints about, and/or pursuit of remedies for racial discrimination, Defendant retaliated against him.

86. Defendant retaliated against Plaintiff for his opposition to, complaints about, and/or pursuit of remedies for racial discrimination when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

87. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

### III.   Civil Rights Act of 1991—Race Discrimination

88.   Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

89.   Defendant did, with malice and reckless indifference to its obligations under 42 U.S.C. § 1981, discriminated against Plaintiff on the basis of race.

90.   Defendant discriminated against Plaintiff when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

91.   Defendant was fully aware of the discriminated against the Plaintiff detailed herein.

92.   Defendant could have and should have taken steps that would have prevented the deprivation of Plaintiff's rights as caused by this discrimination.

93.   As a direct and proximate result of this discriminatory action, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of income, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

## IV.    Civil Rights Act of 1991—Retaliation

94. Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

95. Defendant did, with malice and reckless indifference to its obligations under 42 U.S.C. § 1981, retaliate against Plaintiff for filing a complaint regarding racial discrimination.

96. Defendant retaliated against Plaintiff for his opposition to, complaints about, and/or pursuit of remedies for racial discrimination when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

97. Defendant was fully aware of the retaliation against the Plaintiff detailed herein.

98. Defendant could have and should have taken steps that would have prevented the deprivation of Plaintiff's rights as caused by this retaliation.

As a direct and proximate result of this retaliatory action, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of income, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

V.    *Maryland Fair Employment Practices—*

*Race Discrimination*

99.  Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

100. Defendant unlawfully discriminated against Plaintiff on the basis of his race.

101. Md. Code Ann., State Gov't Art. § 20-606(a) makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race.

102. Defendant discriminated against Plaintiff on the basis of his race when it subjected Plaintiff to harassment, creating a hostile work environment, when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

103. Defendant also discriminated against Plaintiff on the basis of his race when it failed to take appropriate corrective action when placed on notice of the harassment.

104. As a result of Defendant's violations of the Maryland Fair Employment Practices Act, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

## VI.   *Maryland Fair Employment Practices—Retaliation*

105. Plaintiff adopts and incorporates the preceding paragraphs as if fully set forth herein.

106. Defendant unlawfully discriminated against Plaintiff on the basis of his race.

107. Md. Code Ann., State Gov't § 20-606(f) makes it unlawful for an employer to retaliate against an employee on account of that employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination.

108. Plaintiff opposed, complained of, and sought remedies for the racially discriminatory conduct engaged in by Defendant.

109. Because of Plaintiff's opposition to, complaints about, and/or pursuit of remedies for racial discrimination, Defendant retaliated against him.

110. Defendant retaliated against Plaintiff for his opposition to, complaints about, and/or pursuit of remedies for racial discrimination when it punished Plaintiff more severely as compared to his White coworkers, when it subjected Plaintiff to punishment for fabricated misconduct, and when it terminated Plaintiff.

111. As a result of Defendant's violations of the Maryland Fair Employment Practices Act, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

## Request for Relief

*Wherefore*, Plaintiff respectfully requests that this Honorable Court:

a)  Enjoin and restrain Defendant, its agents, officers, servants, and employees from discriminating against other employees on the basis of their race;

b)  Enter judgment against Defendant for compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

c)  Enter judgment against Defendant for punitive damages in an amount deemed reasonable and appropriate by this Court or a jury;

d)  Enter judgment against Defendant for back pay and other lost benefits;

e)  Order reinstatement of Plaintiff in his position at Kaydon Ring and Seal, Inc.;

f)  Award costs and reasonable attorneys' fees; and

g)  Any other relief that this Court or a jury deems reasonable and appropriate.

Respectfully Submitted,

**LEDYARD | RAY LLP**

By: _____

James M. Ray, II
Federal Bar No.: 19726
1 North Charles Street, Suite 1215
Baltimore, Maryland 21201
Phone: (410) 807-8077
Fax:    (410) 576-9391
jim@ledyardray.com

*Counsel for Plaintiff Kevin Vessells*